UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| CAPELLA PHOTONICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00702-GLR |
| | ) |
| CIENA CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>CIENA CORPORATION'S PARTIAL MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   PROCEDURAL HISTORY....................................................................................................3

III.  LEGAL STANDARDS ..........................................................................................................5

      A.     The Availability of Pre-Issuance Damages Turns on the Legal Question of Whether a Reissue Patent's Scope Was Substantively Changed.............................5

      B.     Collateral Estoppel Bars a Party from Re-Litigating an Issue It Already Lost .......................................................................................................................7

      C.     The Court Can Resolve the Affirmative Defenses of Pre-Issuance Damages and Collateral Estoppel on the Complaint and Materials Judicially Noticed ........................................................................................................7

IV.  CAPELLA CANNOT OBTAIN PRE-ISSUANCE DAMAGES BECAUSE IT ADMITTED TO THE PATENT OFFICE THAT THE ADDITION OF "FIBER COLLIMATOR" SUBSTANTIVELY CHANGED "PORTS" ...........................................8

V.   IN THE ALTERNATIVE, IF CAPELLA IS CORRECT THAT THE ASSERTED CLAIMS ARE SUBSTANTIVELY UNCHANGED, THEN IT IS COLLATERALLY ESTOPED FROM RE-LITIGATING THEIR VALIDITY............11

VI.  CONCLUSION....................................................................................................................14

## Table of Authorities

Page(s)

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 8

*Ashe v. PNC Fin. Servs. Grp., Inc.*,
    652 F. App'x 155 (4th Cir. 2016) ......................................................................................... 7

*BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993) ................................................................................................ 6

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
    129 F.3d 1247 (Fed. Cir. 1997) ............................................................................... 2, 6, 9, 10

*Bradley v. Ocwen Loan Servicing, LLC*,
    No. CV PX 16-1501, 2016 WL 4502035 (D. Md. Aug. 29, 2016) ....................................... 7

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
    139 S. Ct. 462 (2018) ........................................................................................................... 4

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
    711 F. App'x 642 (Fed. Cir. 2018) .................................................................................. 4, 13

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
    916 F.3d 1350 (Fed. Cir. 2019) ............................................................................................ 5

*Davis v. Maryland Corr. Inst., Jessup*,
    No. CV DKC-17-3521, 2018 WL 4108032 (D. Md. Aug. 29, 2018),
    *reconsideration denied*, No. CV DKC-17-3521, 2019 WL 1542874 (D. Md.
    Apr. 9, 2019) ......................................................................................................................... 7

*eBay Inc. v. PartsRiver, Inc.*,
    No. C 10-04947 CW, 2011 WL 1754083 (N.D. Cal. May 9, 2011) ..................................... 6

*Fellowes, Inc. v. Acco Brands Corp.*,
    No. 10 CV 7587, 2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) .......................................... 13

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997) .............................................................................................. 8

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993) .................................................................................................. 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    937 F.3d 1359 (Fed. Cir. 2019) ....................................................................................... 7, 12

*Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*,
    370 F. Supp. 3d 251 (D. Mass. 2019) ...................................................................................13

*Laitram Corp. v. NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998)...............................................................................9, 10, 11

*In re Microsoft Corp. Antitrust Litig.*,
    355 F.3d 322 (4th Cir. 2004) ..............................................................................................7, 12

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)............................................................................................2, 12

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017).........................................................................................5, 6, 9

*Realtime Adaptive Streaming, LLC v. Haivision Network Video, Inc.*,
    Civ. No. 17-cv-1520-CFC-SRF, 2018 WL 6532925 (D. Del. Dec. 12, 2018) ..........................8

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
    778 F.3d 1311 (Fed. Cir. 2015)................................................................................................12

*Water Techs. Corp. v. Aurora SFC Sys.*,
    Civ. No. 11-708-RGA, 2017 WL 3598648 (D. Del. Aug. 21, 2017) ...................................2, 6

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)................................................................................................13

**STATUTES**

35 U.S.C.
    § 103....................................................................................................................................13
    § 112......................................................................................................................................5
    § 252............................................................................................................................ *passim*
    §282(b)(4) ..............................................................................................................................5
    § 307(b).................................................................................................................................6
    § 311(b)...............................................................................................................................12

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................1, 7, 14

**OTHER AUTHORITIES**

H.R. Rep. No. 105-39 (1997).............................................................................................................9

Ciena Corporation ("Ciena") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice all claims of infringement by products made, purchased, offered for sale, used, or imported prior to March 17, 2020 in Capella Photonics Inc.'s ("Capella's") Complaint, or, in the alternative, to dismiss claims 23-28, 31-35, 47, 49, and 51-54 of U.S. Patent No. RE47,905 ("the '905 patent") and claims 68-71, 76-77, 80, 84, 86-87, 89-91, 95, 97, 115-117, 124, and 133-37 of U.S. Patent No. RE47,906 ("the '906 patent") (collectively, the "asserted patents").

## I.     INTRODUCTION

This is Capella's second patent infringement suit against Ciena.  Capella already accused Ciena of infringing two patents in 2014.  But Ciena challenged those patents before the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office ("Patent Office") and proved that each of the asserted claims was invalid because they would have been obvious.[1]  As a result, the U.S. District Court for the Northern District of California dismissed the case.

Capella then filed two new patent applications – called reissue applications – to correct mistakes in the invalid claims of the previously asserted patents.  Specifically, Capella narrowed the claims in an attempt to avoid earlier patents and publications that taught the alleged inventions claimed in those patents.  It rewrote the claims, limiting them to a specified type of port – "fiber collimator" ports – instead of general "ports" recited in the previous version of the claims.  But of course, Capella cannot recover damages for any alleged infringement of its newly modified claims until these new claims actually existed – i.e., until after Patent Office issued the new reissue patents

---

[1] A patent's "claims" – which are written at the end of the patent document – define the scope of the property right that a patent confers.  A patent owner submits its proposed claims to the Patent Office as part of its patent application and may modify them over the course of its efforts before the Patent Office to obtain the patent (termed the "prosecution" of the patent).  Once a patent issues, the claims are fixed unless the patent owner engages in some type of special procedure to modify them, such as the reissue process that this motion addresses.

on March 17, 2020.² This common-sense rule is codified in 35 U.S.C. § 252 and termed absolute intervening rights, and it bars damages before the issue date of a reissue patent when that patent involved a "substantive change" in the claims. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) ("[Section 252] relieves those who may have infringed the original claims from liability during the period before the claims are validated."). As a result, Capella's claims for damages before March 17, 2020 must be dismissed with prejudice, and Capella's damages claim in this case is limited to the period between March 17, 2020 and the expiration date of these patents, August 23, 2021.

This issue is ripe for resolution at the pleadings stage. *See Water Techs. Corp. v. Aurora SFC Sys.*, Civ. No. 11-708-RGA, 2017 WL 3598648, at *10 (D. Del. Aug. 21, 2017) (granting motion to dismiss under § 252). It involves a single, straightforward question – whether Capella "substantively changed" the claims when it narrowed "ports" to "fiber collimator" ports and admitted that this change was substantive before the Patent Office as shown below.

Capella, however, contends that the asserted claims in the new reissue patent are ***not*** substantively changed from the original patent. But that ignores the fact that Capella explicitly limited the original claims so that instead of encompassing "ports" generally, each requires at least one "fiber collimator" port. And if the new claims are not substantively different from the original claims (which they are), Capella is collaterally estopped from asserting the new, allegedly substantively unchanged claims of the reissue patents. It is well-settled that collateral estoppel bars the assertion of any patent claims to "substantially the same invention" as a previously invalidated claim, even if those claims use different language. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

---

² The issue date of a patent is shown on the front page in the upper right corner.

As a result, one of two things must be true. Either Capella substantively changed its patent claims to avoid the previously invalidating prior art so that it cannot recover damages before the issue date of the two reissue patents. Or the claims are not substantively changed such that Capella should be collaterally estopped from asserting its new, unchanged claims.

## II. PROCEDURAL HISTORY

The asserted patents are directed to a component used in fiber-optic networks. Dkt. No. 1 ("Compl.") at ¶¶ 21, 24. Fiber-optic networks transmit data by sending light of various "colors" through a system of optical fibers. *Id.* at ¶¶ 10, 11. At a high level, the asserted patents are directed to a component that takes in light through an input port, separates that light by "color," and then sends the different "colors" of light out of different output ports. *Id.* at ¶¶ 21, 24; Exs. 2 at Abstract, 3 at Abstract.[3] These ports are the subject of this dispute.

In 2011, the Patent Office granted Capella two patents: RE42,368 ("the '368 patent") and RE42,678 ("the '678 patent"). Compl. at ¶¶ 19, 22. These two patents were reissues of earlier patents, one of which was itself a reissue. Capella's need to seek long series of reissues to correct a host of validity problems signals the general weakness of Capella's patents, but these prior reissues are not relevant to the legal issues addressed in this motion. In 2014, Capella filed a complaint alleging that Ciena infringed these two patents. *Id.* at ¶ 28. That case, along with several other cases in which Capella asserted the same two patents against other defendants, was ultimately transferred to the Northern District of California. *Id.*

During the 2014 litigation, Ciena and several other parties filed petitions with the PTAB seeking to invalidate all the asserted claims from the two asserted patents. These petitions were based on earlier patents and industry publications (a.k.a. prior art), showing that others had already

---

[3] All Exhibits are to the supporting Declaration of Matthew J. Moore.

invented every aspect of Capella's claimed invention. Capella argued to the PTAB that its patents were valid because the prior art only disclosed one particular type of "port" – termed a "circulator port." *E.g.*, *JDS Uniphase Corp.* v. *Capella Photonics, Inc.*, IPR2015-00739, Paper 16 at 5 (Dec. 1, 2015) (attached as Ex. 4). Even though the language of Capella's claims used only the generic term "port," Capella argued that the term "port" did not include circulator ports.

The PTAB considered Capella's "argu[ment] that a 'port,' as claimed [in the patents], is not a 'circulator port'" and flatly rejected it. *E.g.*, *JDS Uniphase Corp.* v. *Capella Photonics, Inc.*, IPR2015-00739, Paper 50 at 14-15 (Dec. 1, 2015) (attached as Ex. 5). With this rejection, the PTAB found every asserted claim of both patents invalid and cancelled all challenged claims. *E.g.*, *id.*; *JDS Uniphase Corp. v. Capella Photonics, Inc.*, IPR2015-00731, Paper 51 at 13-16, 20 (Sept. 29, 2016) (attached as Ex. 6). Capella appealed these decisions to no avail: the PTAB denied reconsideration, the Federal Circuit affirmed, and then the Supreme Court denied certiorari. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 F. App'x 642 (Fed. Cir. 2018); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462 (2018).

After Capella's loss before the PTAB, it applied for the two reissue patents now asserted in this case. Compl. at ¶¶ 19, 22. In its new reissue applications, Capella amended the claims to attempt to avoid the prior art that invalidated its earlier patents. It limited every one of its claims to only read on a particular type of port that differs from the circulator ports of the prior art, termed a "fiber collimator" port. Exhibit 1 is a chart comparing these reissue claims with those of the earlier '368 and '678 patents and showing that each claim in the asserted reissue patents was modified to add at least one requirement of "fiber collimator" ports. For example, claim 23 of the '905 patent is a version of claim 1 of the '368 patent that is modified to address "[a]n optical add-drop apparatus comprising … ***fiber collimators serving as an input port and one or more other***

*ports*." Ex. 1.  Claim 24 of the '905 patent, for example, is worded to incorporate the language of claim 23 and add further limiting language.  *Id.*  This form of claim is termed a "dependent claim."  Claim 24 does not explicitly include a "fiber collimator" limitation, but it incorporates that limitation from claim 23.  *See* 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").  Every claim of the asserted '905 and '906 patents is thus limited to require a "fiber collimator" port, either explicitly or by incorporation.

Capella also admitted its intent to substantively change its patent scope to the Patent Office: "the claimed 'ports' have been differentiated from circulator ports, such as the circulator ports disclosed in [the prior art]."  RE47,905 File History, Applicant Arguments/Remarks Made in an Amendment at 22 (June 29, 2018) (Attached as Ex. 7); RE47,906 File History, Applicant Arguments/Remarks Made in an Amendment at 22 (June 29, 2018) (Attached as Ex. 8).  The Patent and Trademark Office relied on Capella's addition of the "fiber collimator" requirement and its arguments and representation that these claims are now substantively changed from the earlier, invalid patents to differentiate them from the prior art.  The Patent Office granted these reissues as the '905 and '906 patents, which Capella now asserts in this case.

### III. LEGAL STANDARDS

Federal Circuit law applies to issues of substantive patent law, and Fourth Circuit law supplies procedural standards not specific to patent law.  *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1357 (Fed. Cir. 2019).

#### A. The Availability of Pre-Issuance Damages Turns on the Legal Question of Whether a Reissue Patent's Scope Was Substantively Changed

The bar on pre-issuance damages presents an affirmative defense.  35 U.S.C. §§ 252, 282(b)(4) (outlining affirmative defenses to patent infringement); *Presidio Components, Inc. v.*

*Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (affirming the district court's grant of "the affirmative defense of absolute intervening rights" under § 252).[4]  This defense turns on a straightforward question: if a reissue patent's claims "substantive[ly] change[d]" the claims of the original, pre-reissue patent, then the patent owner is not entitled to any damages before the date of reissue.  *Id.* at 1378.

Courts analyze whether a reissue claim was substantively changed by "determin[ing] whether there is any product or process that would infringe the original claim, but not infringe the amended claim."  *Presidio Components, Inc.*, 875 F.3d at 1378 (quotation omitted).  In other words, if the claim's scope was narrowed so that something that fell within the original claim falls outside of the reissued claim, then this narrowing represents a substantive change.  *Waters Technologies Corp.*, 2017 WL 3598648 at *4 (granting motion to dismiss under § 252); *eBay Inc. v. PartsRiver, Inc.*, No. C 10-04947 CW, 2011 WL 1754083,  (N.D. Cal. May 9, 2011) (granting early summary judgment under § 252 prior to formal claim construction).

 Once a court determines that the reissue claims' scope has substantively changed, the first paragraph of § 252 bars all pre-issuance damages, *Bloom Engineering Co.*, 129 F.3d at  1249, and absolute intervening rights under the second paragraph of § 252 bars all liability for any products made, purchased, offered for sale, used, or imported before the reissue patent issued, *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993).

---

[4] The *Presidio Components* court addressed a patent changed during a reexamination – rather than a reissue – proceeding.  875 F.3d at 1377-78.  The same standard applies to patents changed in reexamination and reissue proceedings.  35 U.S.C. § 307(b) ("Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 for reissued patents….").

6

### B.     Collateral Estoppel Bars a Party from Re-Litigating an Issue It Already Lost

Under Fourth Circuit law, a party is collaterally estopped from re-litigating an issue when (1) "the issue or fact is identical to the one previously litigated," (2) "the issue or fact was actually resolved in the prior proceeding," (3) "the issue or fact was critical and necessary to the judgment in the prior proceeding," (4) "the judgment in the prior proceeding is final and valid," and (5) "the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1371 (Fed. Cir. 2019) (applying Fourth Circuit law and quoting *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004)).

### C.     The Court Can Resolve the Affirmative Defenses of Pre-Issuance Damages and Collateral Estoppel on the Complaint and Materials Judicially Noticed

"Where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6) … if it clearly appears on the face of the complaint and the documents proper for consideration therewith." *Bradley v. Ocwen Loan Servicing, LLC*, No. CV PX 16-1501, 2016 WL 4502035, at *2 (D. Md. Aug. 29, 2016). A court resolving a motion to dismiss on an affirmative defense may "take judicial notice of docket entries, pleadings and papers in other cases." *Davis v. Maryland Corr. Inst., Jessup*, No. CV DKC-17-3521, 2018 WL 4108032, , at *4 (D. Md. Aug. 29, 2018), *reconsideration denied*, No. CV DKC-17-3521, 2019 WL 1542874, (D. Md. Apr. 9, 2019); *Ashe v. PNC Fin. Servs. Grp., Inc.*, 652 F. App'x 155, 157 (4th Cir. 2016) (holding that a district court appropriately relied on judicially noticed documents from a Trademark Trial and Appeal Board proceeding in dismissing a complaint on the affirmative defense of collateral estoppel). Ciena requests that the Court take judicial notice of the documents attached as Exs. 2-28, which are (1) publicly available copies of the patents asserted in this case, (2) documents publicly filed as part of these patents' prosecution, and (3) documents publicly filed

before the PTAB challenging the earlier, '368 and '678 patents.  A court may take judicial notice of patents, patent prosecution histories, and entries in the dockets of IPR PTAB proceedings, all of which are matters of public record.  *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) ("Although that patent is not part of the record on appeal, it was referred to at the argument and is publicly accessible.  Accordingly, we have taken judicial notice of it."); *Realtime Adaptive Streaming, LLC v. Haivision Network Video, Inc.*, Civ. No. 17-cv-1520-CFC-SRF, 2018 WL 6532925, at *24-25 (D. Del. Dec. 12, 2018) ("[T]he court takes judicial notice of the prosecution history."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, n.1 (Fed. Cir. 1997) (taking judicial notice of filings before the PTAB's predecessor, the Board of Patent Appeals and Interferences).

Here, the Court may resolve the issues Ciena raises in this motion on the record before it.  Capella alleges in its complaint that its reissue claims are "substantially identical" to the original claims.  Compl. at ¶¶ 20, 23.  This allegation is a conclusion of law that merely parrots the language of 35 U.S.C. § 252.  The Court should therefore disregard it.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  To the contrary, as explained more fully below, Capella's own admissions in documents judicially noticeable compel the conclusion that its claims are substantively changed and it cannot obtain pre-issuance damages.  In the alternative, if the Court agrees with Capella's allegation that the claims are "substantially identical" (which is not correct), this allegation compels the application of collateral estoppel.

**IV.    CAPELLA CANNOT OBTAIN PRE-ISSUANCE DAMAGES BECAUSE IT ADMITTED TO THE PATENT OFFICE THAT THE ADDITION OF "FIBER COLLIMATOR" SUBSTANTIVELY CHANGED "PORTS"**

Capella cannot obtain pre-issuance damages because the scope of the asserted claims in the '905 and '906 patents has substantively changed from that of Capella's earlier patents.  A

narrowing change – such as the change to "fiber collimator" ports – is substantive when there "is any product or process that would infringe the original claim, but not infringe the amended claim." *Presidio Components, Inc.*, 875 F.3d at 1378 (quotation omitted).  Here, that is plainly the case. The PTAB has already found that a product with *any* port, including a circulator port, would infringe the earlier patents' claims.  *E.g.*, Ex. 5 at 14-17, 20 ("[Capella] argues that a 'port,' as claimed, is not a 'circulator port' because the '678 patent 'disavows circulator-based optical systems.'  We disagree.").  And Capella admitted during the patents' prosecution that a product with a circulator port would not infringe the amended claims in the asserted patents.  Ex. 7 at 22 ("[T]he claimed 'ports' have been differentiated from circulator ports, such as the circulator ports disclosed in [the prior art]."), Ex. 8 at 22.  As a result, Capella cannot obtain pre-issuance damages.

The Federal Circuit has recognized that claims amended to avoid a particular feature disclosed in the prior art were substantively changed.  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1349 (Fed. Cir. 1998); *Bloom Engineering Co.*, 129 F.3d at 1249.[5]  Capella admitted that it did just this, which shows that its claims have substantively changed.

*Laitram* and *Bloom* both addressed patents that were allowed only because of a change to the claim language to avoid some feature of the prior art.  These opinions reasoned that this amendment – which changed a claim from invalid to valid – must have substantively changed the claim's scope.  *E.g.*, *Laitram Corp.*, 163 F.3d at 1349.

For example, in *Laitram*, the Federal Circuit addressed a reissue patent that modified the term "alphanumeric characters" to "*type quality* alphanumeric characters."  *Id.* (emphasis added).

---

[5] Although the *Laitram* and *Bloom Engineering* courts considered a differently worded version of 35 U.S.C. § 252, they did so under the same "substantively changed" standard that applies to the current version.  H.R. Rep. No. 105-39, at 64 (1997) ("This change … is not intended to change the law of intervening rights but rather is intended only to codify existing decisional law.").

9

The court held that the addition of the narrowing modifier "type quality" necessarily excluded other qualities of "alphanumeric characters" and thus substantively changed the claim scope. *Id.* It reasoned that "[m]ost significantly,… the addition of the 'type quality' limitation, along with the other amendments, resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art." *Id.* In other words, the fact that the prior art disclosed "alphanumeric characters" but did not disclose "*type quality* alphanumeric characters" proved that this difference in language resulted in a difference in claim scope. The court found this amendment to be "highly influential" evidence in its determination that the claims had substantively changed. *Id.* Similarly, in *Bloom Engineering*, the Federal Circuit considered a patent owner's addition of a requirement that a stream of gas be "separate from the combustion air stream." 129 F.3d at 1250. It held that this additional limitation represented a substantive change because it "was necessary in order to distinguish Bloom's injected stream from that shown in the [prior art]." *Id.* at 1251.

Here, too, Capella explicitly admitted that it changed "ports" to "fiber collimator" ports in order to narrow its claims to avoid the circulator ports disclosed in the prior art. In the PTAB challenges of the earlier '368 and '678 patents, the PTAB found that the term "ports" includes "circulator ports." *E.g.*, Ex. 5 at 14-17, 20 ("There is no dispute that the ordinary and customary meaning of 'port' encompasses circulator ports, and, indeed, any point of entry or exit of light.") (quotation omitted). As a result, the Board found prior art disclosing circulator ports to fall within the scope of the claims, and it found the claims to be invalid on that basis. *Id.* Capella filed its reissue applications to fix this fatal invalidity problem. In the same submission where it narrowed the claims to cover "fiber collimator" ports, Capella explained the effect of this amendment: "the claimed 'ports' have been differentiated from circulator ports, such as the circulator ports disclosed in [the prior art]." Ex. 7 at 22, Ex. 8 at 22. Capella further clarified this limiting effect later in

prosecution. Just before the patent was allowed, the Patent Office rejected the claim that would issue as claim 51 of the '905 patent (then numbered claim 39 of the application). Ex. 9 at 6-8. Capella then amended this claim to clarify that it required "***fiber collimators*** serving as drop ports.*"* Ex. 10 at 13-14 (emphasis added). Immediately thereafter, the Patent Office allowed this claim. Ex. 11. These unambiguous admissions proves that the new, narrower term "fiber collimator" port excluded products or prior art that fell within the generic term "port" and tried to convert invalid claims to valid claims. That makes it a substantive change. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir.1998) ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment."). Capella therefore cannot obtain pre-issuance damages.

V. **IN THE ALTERNATIVE, IF CAPELLA IS CORRECT THAT THE ASSERTED CLAIMS ARE SUBSTANTIVELY UNCHANGED, THEN IT IS COLLATERALLY ESTOPPED FROM RE-LITIGATING THEIR VALIDITY**

Capella alleges that its claims are "substantially identical" despite the addition of the limiting "fiber collimator" port language. Compl. at ¶¶ 20, 23. This allegation of a legal conclusion is wrong and should be disregarded, as explained in the preceding section. But if Capella's allegation is correct, this case amounts to no more than an attempt to re-litigate patent claims that are "substantially identical" to claims already proved invalid in the parties' prior litigation. *Id.* Collateral estoppel bars any such attempt to re-litigate invalidated claims.

Under Fourth Circuit law, a party is collaterally estopped from re-litigating an issue when (1) "the issue or fact is identical to the one previously litigated," (2) "the issue or fact was actually resolved in the prior proceeding," (3) "the issue or fact was critical and necessary to the judgment in the prior proceeding," (4) "the judgment in the prior proceeding is final and valid," and (5) "the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to

11

litigate the issue or fact in the prior proceeding." *Intellectual Ventures I LLC*, 937 F.3d at 1371 (applying Fourth Circuit law and quoting *In re Microsoft Antitrust Litigation*, 355 F.3d at 326).

*First*, if the Court agrees with Capella's position that the claims of the asserted patents are "substantially identical" to those invalidated in the prior litigation, Compl. at ¶¶ 20, 23, then the claims are also sufficiently identical for purposes of collateral estoppel. "Complete identity of claims is not required to satisfy the identity-of-issue requirement…." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015). Rather, patent claims are "identical" for purposes of collateral estoppel even if they "use slightly different language to describe substantially the same invention." *Ohio Willow Wood Co.*, 735 F.3d at 1342. The claims in *Ohio Willow Wood* used different language – replacing a "'polymeric' gel" with a "'block copolymer' gel." *Id.* Even so, the Federal Circuit held that the patent owner had "not provided any explanation regarding *how* the 'block copolymer' limitation is patentably significant," and it applied collateral estoppel. *Id.* (emphasis in original). Here, Capella affirmatively alleges that the addition of the "fiber collimator" language is not significant. Compl. at ¶¶ 20, 23 (alleging the earlier '368 and '678 patents' and asserted '905 and '906 patents' claims are "substantially identical"). Thus, accepting this allegation as true (which it is not), the issues in this case are identical to those already resolved in the prior litigation.

*Second*, if the scope of the claims in the two asserted patents is "substantially identical" to the claims in the two patents asserted in the earlier case, the issue of invalidity was resolved in the prior proceeding. The sole issue before the PTAB was the claims' invalidity. *E.g.*, Ex. 5; *see also* 35 U.S.C. § 311(b) (limiting the scope of the relevant type of PTAB challenge to issues of invalidity under 35 U.S.C. §§ 102 and 103). Therefore, the PTAB finding of invalidity also resolved the issue of invalidity here. *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed.

12

Cir. 2018); *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 256–57 (D. Mass. 2019); *Fellowes, Inc. v. Acco Brands Corp.*, No. 10 CV 7587, 2019 WL 1762910, at *6 (N.D. Ill. Apr. 22, 2019).

*Third*, the question of validity was critical and necessary to the PTAB's decision. *XY*, 890 F.3d at 1294. Again, the sole issue before the PTAB was that the claims are invalid. *E.g.*, Ex. 5. Therefore, the PTAB's finding of invalidity was critical and necessary to its decision to cancel the claims.

*Fourth*, the PTAB's decision was a final and valid judgment, affirmed on appeal. *Capella Photonics, Inc.*, 711 F. App'x. 642. A Federal Circuit "affirmance renders final a judgment on the invalidity of the [claims], and has an immediate issue-preclusive effect." *XY, LLC*, 890 F.3d at 1294.

*Fifth*, Capella had a "full and fair opportunity to litigate" the earlier patents' validity. It vigorously and thoroughly litigated these claims before the PTAB and Federal Circuit and it sought certiorari before the Supreme Court. *Capella Photonics, Inc.*, 711 F. App'x at 642; *see also XY, LLC*, 890 F.3d at 1294 ("a [patent owner], having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his 'day in court'").

If the Court agrees with Capella that the addition of "fiber collimator" is not a substantive change, then collateral estoppel applies and Capella is precluded from asserting the reissue claims. *XY*, 890 F.3d at 1294 (holding that an affirmed finding of invalidity "collaterally estops [Plaintiff] from asserting the patent in any further proceedings"). As shown in Ex. 1, claims 23-28, 31-35, 47, 49 and 51-54 of the '905 patent and claims 68-71, 76-77, 80, 84, 86-87, 89-91, 95, 97, 115-117, 124, and 133-37 of the '906 patent are identical to the invalidated claims but for the addition

of "fiber collimator." If collateral estoppel applies, then Capella is barred from asserting these claims in this case.

## VI.     CONCLUSION

For the foregoing reasons, § 252 prevents Capella from asserting that any product made, purchased, offered to sell, used, or imported prior to March 17, 2020 infringes any asserted claim. Accordingly, Ciena respectfully requests that the Court dismiss all claims of infringement prior to March 17, 2020, pursuant to Fed. R. Civ. Proc. 12(b)(6). In the alternative, if the Court agrees with Capella that the asserted claims are substantially unchanged from the claims of the '368 and '678 patents, then the doctrine of collateral estoppel bars Capella from asserting claims 23-28, 31-35, 47, 49, and 51-54 of the '905 patent and claims 68-71, 76-77, 80, 84, 86-87, 89-91, 95, 97, 115-117, 124, and 133-37 of the '906 patent.

Dated: June 8, 2020

        Respectfully submitted,

        /s/ Matthew J. Moore
        Matthew J. Moore (Bar No. 19793)
        matthew.moore@lw.com
        Ashley N. Finger (*pro hac vice* pending)
        ashley.finger@lw.com
        Latham & Watkins LLP
        555 Eleventh Street, N.W., Suite 1000
        Washington, D.C., 20004
        (202) 637-2200 – Tel.
        (202) 637-2201 – Fax

        Clement J. Naples (*pro hac vice* pending)
        clement.naples@lw.com
        LATHAM & WATKINS LLP
        885 Third Avenue
        New York, NY 10022-4834
        (212) 906-1200 – Tel.
        (212) 751-4864 – Fax

        Kyle A. Virgien (*pro hac vice* pending)
        kyle.virgien@lw.com
        LATHAM & WATKINS LLP
        505 Montgomery St., Suite 2000
        San Francisco, CA 94111
        (415) 391-0600 – Tel.
        (415) 391-8095 – Fax

        *Attorneys for Defendant Ciena Corporation*